## CONOVER a. WOOD.

*New York Superior Court ; Special Term, June,* 1857.

CONTEMPT OF COURT.—REFERENCE.

It is contempt of court for a person who knows of the existence of an order in the hands of an officer intending to serve the same upon him, to prevent, wilfully and by open force, either made or directed, the service of such process.

But it is essential to constitute the offence in such case that the party should be aware that the officer was desirous to serve him.

Where, on an order to show cause why a party should not be punished for contempt in resisting the service of process, the opposing affidavits render it clear that the party was innocent of any intention to resist service, the court will not direct a reference to enable the moving party to introduce proofs of such intention.

Order to show cause why the defendant should not be punished as for a contempt.

This action was brought by Daniel D. Conover against Fernando Wood, mayor of the city of New York, and James C. Willett, sheriff of the city and county of New York. A warrant of arrest having been granted against the defendant Wood, it was placed in the hands of Frederick W. Perry, one of the coroners of the city and county of New York, to be executed.

The coroner proceeded to the mayor's office, in the endeavor to execute the warrant, but was denied admission and forcibly prevented from entering, by policemen stationed on guard at the door, and professing to act by direction of the mayor. He sent in word that he had business with the mayor, and desired to see him, but was refused admission, in answer.

On an affidavit of the coroner, showing these facts, and

also averring that the defendant had resisted the service of the process, the plaintiff obtained an order to show cause why the defendant Wood should not be punished as for a contempt.

On behalf of the defendant Wood numerous affidavits were put in tending to show that he was not informed that the coroner's object in desiring to see him was to make service of process; and that afterwards being so informed, he sent for the coroner, and submitted to the execution of the process. The facts alleged in the respective affidavits are further stated in the opinion of the court.

On the hearing of the order, the counsel for the plaintiff asked the court to direct a reference to ascertain whether the defendant, when refusing to admit the coroner, was aware that the latter desired to make service of process, or not.

*David Dudley Field,* for the motion.—I. The court has clearly the power to grant a reference in cases like the present. (2 *Rev. Stats.,* 626, § 19; *Code,* § 271, *subd.* 3.)

II. Under the circumstances of the case a reference should be allowed. The usual course of proceeding is to issue an attachment; and where that is done the court have the defendant's answer on oath to each specific question, such as may be put. The court ought not, by a change in the mode of proceeding, to allow the plaintiff to be deprived of an opportunity to disprove the affidavits put in on the part of the defendant. The plaintiff should be allowed a reference with permission to examine the defendant Wood on oath.

*Gilbert Dean,* opposed.

Hoffman, J., on the conclusion of the argument, said:—I feel it necessary to say a word here, though I shall not decide this motion at the present time. I congratulate myself (and, indeed, I believe it is the good fortune of most of the judges in this city) that applications of this kind are so rare, as to make at least myself destitute, from inexperience, of the necessary information, immediately to decide questions of contempt or any other questions which arise on motions of this nature. This application arises under an order to show cause, mainly drafted

by myself after an examination of the law. It is founded upon a provision of the statute which has been referred to by the counsel for the defendant (2 *Rev. Stats.*, 278, § 10, *subd.* 4). It being founded upon that, an order to show cause appeared to me to be the proper as well as the legal course to be pursued—the direction of the statute being that the party shall have notice of the accusation against him for a reasonable time to prepare for his defence.

The affidavits which are now produced presumptively make out a case exonerating this defendant from the charge of intentional resistance to the service of the process ordered by this court. It is not to be denied that the *scienter* (so to speak) of that intended resistance—the criminality of contumacy in regard to an order of the court—consists in the intention; and the existence of that intention must be deduced upon knowledge or reasonable information. In other words, unless Mr. Wood knew, at the time Coroner Perry attempted to serve this order, that he had an order to which the defendant was bound to pay obeisance—unless he had that knowledge, or some information that Coroner Perry came there to serve such order, he could not be guilty of the attempt to violate or resist the process of the court. His own affidavit is explicit that no information was given to him by Coroner Perry that he had such a process—that the communication which was made to him was made through Mr. Dutcher, his ordinary messenger; and that the only information communicated to him was that the coroner wished to see him. Mr. Dutcher corroborates this fully. He did not communicate to the mayor that Coroner Perry was there with a process for the purpose of serving it on the mayor. The latter is thus placed in a position in which it appears to me difficult to imagine that the foundation upon which the alleged intention of violating or resisting the process can be sustained: in other words, how any testimony can be adduced which will tend to convict Mayor Wood and Mr. Dutcher of such falsehood—such absolute falsehood and perjury as they must have been guilty of in these affidavits, if Coroner Perry did communicate to Dutcher, and Dutcher did communicate to the mayor a knowledge of the process or order which was in his possession, and his desire to see the mayor for the purpose of serving it. Yet that is not impossible; because there may be proof of declarations made by

Dutcher, or of admissions made by the mayor, which would tend to neutralize or contradict their positive statements.

I am then brought to the question whether, under this section of the statute, when the affidavits to meet the order to show cause present a strong case to the judge's mind, of freedom from any contumacy done or intended, it is within the province of the court, and the practice that has been observed in similar cases, to direct a further inquiry; and it appears to me that that is the only question; but at any rate it is the only question which, as at present advised, I should take time to consider. I think at present that the order to show cause had sufficient foundation; and again I am strongly inclined to the opinion that the provision of the Revised Statutes, to which reference has been made by the defendant's counsel (2 *Rev. Stats.*, 278, § 10, *subd.* 4), can properly bear an interpretation which would embrace a case of intended resistance to a process or order known to be issued by a court, although no actual service is made upon the party. Upon these two points I see no reason to change the opinion which induced me to grant the order to show cause, although I shall give them further consideration. The main question is the one alluded to—whether, when the defendant makes a case sufficient to exempt him, it is the course of practice in similar instances to give an opportunity to the party making the accusations for further inquiry, and to adduce testimony, and if that be the case, whether a reference of the matter to a referee would be the proper mode.

I will therefore adjourn the case for decision on the application until Thursday at 10 o'clock.

On the adjourned day, Mr. Justice Hoffman rendered his decision in writing, as follows:—

Hoffman, J.—Upon the return of an order to show cause why the defendant should not be punished for resisting the process of the court, an application is made on the part of the plaintiff for a reference to ascertain the facts by examining the parties and taking testimony.

The order to show cause was made under article 1 of title 11, chapter 111 of the Revised Statutes (p. 276), and under subdivision 4 of section 10. The coroner had certified to the court

the names of the resisters, their aiders and abettors, to the end that they might be proceeded against for their contempt, pursuant to section 1 of 2 Revised Statutes, 441.

A distinction is made between the proceedings in such a case and those under the title, Proceedings for contempts to enforce civil remedies (2 *Rev. Stats.*, 523). Section 14 of the statute first referred to (2 *Rev. Stats.*, 278), provides that nothing in the preceding sections shall be construed to extend to any proceeding against parties or officers, as for a contempt for the purpose of enforcing any civil right or remedy ; and in proceedings under the latter act it is essential to the infliction of punishment that the court shall adjudge the act to have impaired, defeated, or prejudiced the rights or remedies of a party.

This distinction is referred to by Mr. Justice Bosworth in the case of the People *a.* Compton (2 *Duer*, 578); and in the case of Adams *a.* Dancer (2 *Brod. & B.*, 24), there is an example of it. A sheriff's officer served the defendant with a copy of a *capias*, showed him the original, and explained the object. The defendant collared him, and ordered him to quit his presence. On moving for an attachment for a contempt of the process, the counsel was desired to obtain an affidavit, pointing out more fully in what respect, and to what degree, the act of violence obstructed the due execution of the process of the court. On another day, nothing being added, the court said they would lay down no rule whether every collaring or shaking an officer would or would not be deemed a contempt of court; but it sufficed to say, that no case was here made which disclosed any such obstructions of their process as to require this summary mode of punishment.

Section 12 of the statute (2 *Rev. Stats.*, 277) directs that in cases where the contempt is not committed in the presence of the court, the party charged shall be notified of the accusation, and have a reasonable time to make his defence. This was given by the order to show cause. The counsel for the defendant insists that the case is not within the provision of the statute; that the order or process must be served before the case of resistance can arise. I think not.

In my opinion, when a party knows of the existence of an order in the hands of an officer to be served upon him, and wilfully prevents that service by open force made or directed,

the resistance is as fully within the statute as if he had received and contemned it. In the Commonwealth *a.* Feely (2 *Virg. cases*, 1), Feely was punished as for a contempt, for using means to prevent one Wright from attending as a witness to prove a deed executed by him, Feely, after a subpœna had been served upon Wright. And the Practical Register defines a contempt to be " a disobedience to the court, or an opposing order despising the authority, justice, and dignity thereof. Sometimes it arises from one or more opposing and disturbing the execution or service of the process of the court, or using force to the party that serves it." (*Pract. Reg.*, 99, 100.) See also Gilbert's History of the Common Pleas, 20, 21, for an account of the origin of the power, and the reasons why a trial by jury in such cases is not a right.

The affidavits on the part of the defendant have made out a case exonerating him from either the act of resistance or the intention to resist. His own oath is corroborated by that of Dutcher, that no communication of the fact that the coroner had process to serve upon him, was made to him.

The inquiry, and the only pertinent inquiry, is, whether the defendant knew of the coroner having an order to serve upon him, or whether there are facts enough deposed to, to make him chargeable with such knowledge. In this view Dutcher is contradicted by Perry, as to the announcement of his possessing a writ, and his intention to serve it. But Dutcher cannot be contradicted by Perry, as to the omission to apprise the defendant of that fact. It might tend to render his statement doubtful as to the one fact, if he was not to be believed as to the other, and with oath against oath, I might be warranted in making a further inquiry. But still the question would remain upon the defendant's affidavit, not contradicted, and apparently not capable of being contradicted. That is also collaterally sustained by the proof of his sending for the coroner in order to submit to the court, after some information subsequently reaching him, that the coroner had a writ. I have come to the conclusion that in such a case, when the court is satisfied that no continuance of its order took place, and the papers before it makes this out free from doubt, a further investigation is not allowable.

Every court is the judge whether a contempt has been committed against it or not. (4 *Cow.*, 50; 18 *Jurist*, 225, *Q. B.*;

Crawford's case, 13 *Queen's Bench R.*, 613.) In the People *a.* Few (2 *John.*, 209), an order to show cause why an attachment should not issue had been granted. It was for improper and disrespectful publications during a suit. Upon affidavits the court refused the rule; saying—

"The issuing of an attachment is always a matter of discretion in the court, and under the circumstances of the case, public justice does not require our interposition, though we may condemn the publication in question." In Jackson *a.* Smith (5 *Johns.*, 117), the court say that if the answers to interrogatories show that no contempt has been committed, the party is entitled to his discharge; but if it be admitted, the court will proceed to pronounce such judgment as the circumstances of the case may require.

The leading case of The People *a.* Freer (1 *Cai. R.*, 485–518), is an example, also, of the determination of the question upon affidavits. To the like effect are several cases as well under the other statute, when the proceeding is to protect civil remedies, as in England under the general power of a court. (Albany City Bank *a.* Schermerhorn, 9 *Paige*, 375; Matter of Vanderbilt, 4 *Johns. Ch. R.*, 57; Blake *a.* D'Arsy, 2 *Molloy*, 352; and several cases cited in Lechmere Charlton's case, 2 *Mylne & C.*, 340.)

The rule deducible from the authorities is this: That in a proceeding like the present, it is the satisfaction of the offended dignity of the law, and vindication of the respect due to tribunals of justice which calls for interposition and punishment. The court, which is alleged to have been insulted, is the judge of what is due to itself, and to the cause of public justice. If, upon the case presented, it cannot hesitate—if there is no room, judicially speaking, for doubt upon the facts—if, upon that case, a jury could come but to one conclusion, then there is neither precedent nor justice in protracting the inquiry, upon the suggestion that a severe examination may contradict what is now established, or may render doubtful what is now clear. My conclusion is, that the order to show cause must be discharged. It is not a case for costs.