242 PEOPLE ex rel. BARNES *v.* COURT OF SESSIONS.

THIRD DEPARTMENT. DECEMBER TERM, 1894.          [Vol. 82.

MAYHAM, P. J., and PUTNAM, J., concurred.

Judgment affirmed, with costs.

---

THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM BARNES, JR., and Others, Relators, *v.* THE COURT OF SESSIONS OF ALBANY COUNTY, Respondent.

*Criminal contempt of court — false report of judicial proceedings — trial therefor — right of cross-examination of the party in contempt — issues raised by a disclaimer — determination of the court reviewable by certiorari.*

The practice of courts for the punishment of a criminal contempt is not regulated by statute, except as prescribed by section 10 of the Code of Civil Procedure; the provisions of sections 2266 to 2292, inclusive, of the Code of Civil Procedure refer to the practice in cases of civil contempt, and do not apply to cases enumerated in section 8 of the Code of Civil Procedure, except as to the acts enumerated in such section 8, which are also enumerated in section 14 of the Code of Civil Procedure, and have resulted in the rights or remedies of a party to a civil action or special proceeding being defeated, impaired, impeded or prejudiced thereby, where the offending party is sought to be punished, as for a civil or private contempt, upon the motion of the party injured.

An affidavit is unnecessary to institute a proceeding to punish a person for criminal contempt; the court may proceed to make the accusation upon its own motion, and where the proceeding is by order to show cause it is unnecessary to file interrogatories before the final adjudication.

Every court is the judge as to whether a contempt has been committed against it.

After the parties accused of a criminal contempt have been brought into court and have been notified of the charge against them, and a reasonable time has been given them to make their defense, their trial is necessarily of a somewhat summary character; and while all necessary safeguards to protect the innocent should be preserved, yet the same technical precision of pleading and evidence that is required in the trial of an indictment before a jury is not required.

The proceeding is one conducted on behalf of the public to maintain the dignity of the court and the public respect therefor, and upon a review of such proceeding the appellate court will not be inclined to reverse the proceedings taken by a court to preserve its self-respect and maintain its dignity, unless it pretty clearly appears that injustice has been done, or the rules of law promulgated for the protection of the liberty of the citizen have been plainly violated.   In

such a proceeding the court acts both as court and jury, and is judge both of the law and the facts.

A court has jurisdiction of a proceeding to punish, for a criminal contempt, persons who are charged with publishing false or inaccurate reports of the proceedings of that court, section 8 of the Code of Civil Procedure expressly making such publication a criminal contempt; and where the affidavit upon which such proceedings are instituted alleges the publication of several articles in a newspaper; that such articles were grossly false and inaccurate reports of the proceedings of the court, and that the defendants were the editors, proprietors and managers of the newspaper, and the writers and publishers of said articles, the mere denial by the defendants that they had been guilty of publishing any false or inaccurate report of the proceedings of the court is in effect an admission of the publication of such articles in the newspaper named, and that the defendants were the editors, proprietors and managers of the newspaper, and the writers and publishers of the articles set forth in the affidavit.

The rule that a defendant making an answer to a complaint against him admits those things stated in the complaint which he does not in his answer deny, is not simply a rule of pleading, but is a rule of evidence as well; and where upon the hearing of a motion the party answering the moving affidavit only denies a portion of the allegations of fact alleged in them, he must be held to admit all those allegations which he does not deny.

The defendant in a proceeding brought to punish him for criminal contempt cannot go upon the stand as a witness and give testimony which is intended to be for his own benefit, and refuse to answer questions that may tend to convict or criminate him. He must be held to the same rules that prevail in relation to any defendant charged with crime, who becomes a witness in his own behalf, and he cannot elect to give testimony as to such parts of his case as he may choose and refuse to do so as to others, and if he does so refuse, the presumption is that he does so because he cannot truthfully answer without confessing his guilt.

The disclaimer by a person sought to be punished for criminal contempt of court, in that he has published a false or inaccurate report of the proceedings thereof, of any intention of being guilty of contempt or of the publication of any false or inaccurate report of the proceedings of such court, in so far as it raises a question of intention, is no defense or justification of his action, and is merely matter in palliation of the offense.

The silence of a party, where he has an opportunity to deny a statement in which he is interested, is to be taken as an admission, and must be so regarded on the trial of a person for a criminal contempt of court.

The determination of a court punishing a person for a criminal contempt, when the contempt was not committed in the presence of the court, may be reviewed by certiorari.

CERTIORARI issued out of the Supreme Court of the State of New York and allowed on the 12th day of July, 1894, directed to the Court of Sessions of the county of Albany, commanding it to return

244  PEOPLE ex rel. BARNES *v.* COURT OF SESSIONS.

THIRD DEPARTMENT, DECEMBER TERM, 1894.      [Vol. 82.

to the office of the clerk of the county of Albany all its proceedings, decisions and actions in relation to the punishment of the petitioners for criminal contempt of court and imposing upon each of them a fine of $100 therefor.

The facts relating to the procedure in this case are fully stated in the opinion of MAYHAM, P. J.

*Matthew Hale*, for the relators.

*James W. Eaton*, for the respondent.

HERRICK, J. :

This case comes before us upon a writ of certiorari to review a proceeding to punish the relators for contempt in having published a false and grossly inaccurate report of the proceedings of the Court of Sessions of Albany county.

The proceeding is one founded upon section 8 of the Code of Civil Procedure. The contempt charged is a criminal contempt.

The practice of courts for the punishment of criminal contempt does not seem to be regulated by statute any further than as prescribed by section 10 of the Code of Civil Procedure, which reads as follows. "Such a contempt committed in the immediate view and presence of the court may be punished summarily; when not so committed, the party charged must be notified of the accusation and have a reasonable time to make a defense."

The provisions of title 3 of chapter 17, sections 2266 to 2292, inclusive, of the Code of Civil Procedure refer, I think, to the practice in cases of civil contempt, and do not apply to the cases enumerated in section 8, unless some of the acts set forth as contempts in section 8 are also included amongst those enumerated in section 14, and have resulted in the rights or remedies of a party to a civil action or special proceeding being defeated, impaired, impeded or prejudiced thereby, and the offending party is sought to be punished as for a civil or private contempt upon the motion of the party injured.

The distinction between criminal and civil or private contempts is very clearly set forth in *People ex rel. Munsell* v. *Court of Oyer & Terminer* (101 N. Y. 245).

The provisions of the Code of Civil Procedure in relation to

PEOPLE ex rel. BARNES *v.* COURT OF SESSIONS. 245

Hun.]        THIRD DEPARTMENT, DECEMBER TERM, 1894.

criminal contempts are similar to those of the Revised Statutes, which they supersede, so that the decisions upon questions of criminal contempt arising under the Revised Statutes are applicable to cases arising under the Code of Civil Procedure.

It will be observed that the only requirements when the contempt is not committed in the presence of the court are that " the party charged must be notified of the accusation and have a reasonable time to make a defense." The form and manner of the notice is not specified ; the practice has been to proceed by an order to show cause. (*The People* v. *Freer,* 1 Caines, 518 ; *Conover* v. *Wood,* 5 Abb. Pr. 84.)

An affidavit seems to be unnecessary, and it has been held that the court may proceed upon its own motion to make the accusation. (*People ex rel. Greeley* v. *Court of Oyer & Terminer,* 27 How. Pr. 14–18.)

It has been held that where the proceeding is by an order to show cause, that it is unnecessary to file interrogatories before the final adjudication. (*Pitt* v. *Davison,* 37 N. Y. 235–243 ; *The Mayor,* etc., v. *N. Y. & S. I. Ferry Co.,* 64 id. 622.) Although these cases were cases of civil contempt, the principle applies in criminal cases as well.

The court below proceeded by an order to show cause. The court having directed the district attorney to take measures to bring the publisher and author or the publishers and authors of said newspaper articles before the bar of said court, the district attorney prepared an affidavit, upon which an order to show cause was granted, directing the relators to show cause why they should not be punished for contempt of court in writing and publishing the articles referred to in the affidavit of the district attorney. The proceeding resulted in the court fining the relators for the contempt charged against them.

It is elementary law that every court is the judge as to whether a contempt has been committed against it. (*Ex parte Chamberlain,* 4 Cow. 49 ; *Conover* v. *Wood,* 5 Abb. Pr. 84 ; *Mitchell's Case,* 12 id. 252.)

The contempt in this case was of the most outrageous character, and the only question open for discussion by this court is, as to whether there was sufficient before the court to justify the court in

246   PEOPLE ex rel. BARNES *v.* COURT OF SESSIONS.

THIRD DEPARTMENT, DECEMBER TERM, 1894.                    [Vol. 82.

finding that the relators were the persons guilty of the contempt that had been committed against it; this leads us to a review of the proceedings had in the court.

After the parties accused of contempt have been notified of the charge against them and brought into court, and a reasonable time given them to make their defense, the trial, if it may be so called, is necessarily of a somewhat summary character, and while all necessary safeguards to protect the innocent should be preserved, yet the same technical precision of pleading and evidence that is required in the trial of indictments before a jury is not required. The proceeding is one conducted on behalf of the public to maintain the dignity of the court and the public respect, without which courts are useless; and upon a review of such proceedings the appellate court will not be ready to reverse the proceedings taken by a court to preserve its self-respect and maintain its dignity, unless it pretty clearly appears that injustice has been done, or the rules of law promulgated for the protection of the liberty of the citizen have been plainly violated.

The affidavit of the district attorney, referred to in the order to show cause, set forth the publication of several articles in a newspaper published in the city and county of Albany, reflecting upon the presiding judge of the Court of Sessions of Albany county, and which articles, it was alleged in said affidavit, were grossly false and inaccurate reports of the proceedings in said court. The articles in question appear to be set forth in full in said affidavit.

. In his affidavit the district attorney alleged, upon information and belief, that the defendants (the relators here) were the editors, proprietors and managers of the newspaper named in his affidavit, and the writers and publishers of said articles.

The order to show cause was issued on the 25th day of April, 1894. The relators appeared in court in person and by counsel on the 4th day of May, following.

As before stated, the hearing in proceedings of this character is necessarily somewhat summary, and in determining whether sufficient appeared before the court to justify it in coming to the conclusion that the defendants were the persons responsible for the writing and publication of the articles in question, we must bear in mind that the court was acting as court and jury both, and was judge both

of the law and the facts, and we must try and place ourselves in the position of the court at that time in order to judge how the proceeding, demeanor and conduct of the defendants appeared to the court, and how far the same would justly and properly influence the judgment and opinion of the court in arriving at the conclusion that the persons then before it were in truth and fact the parties responsible for the newspaper articles in question.

On coming into court, in response to the order to show cause, the counsel for the defendants " moved to dismiss the proceedings on the ground that nothing was stated in the affidavit which gives the court any jurisdiction of the proceedings ; that the only statute which gave jurisdiction to any court to punish for criminal contempt was section 8 of the Code of Civil Procedure, and that the affidavit did not show the commission of any act coming within the provisions of that section or any subdivision thereof ; also, that the affidavit did not state or point out wherein the article alleged to be published by the defendants was false or grossly inaccurate ; that the affidavit, like an indictment or a complaint in a civil action, should point out wherein the report is false and wherein it is grossly inaccurate, and that until defendants are apprised of what is charged against them in that respect, they ought not to be put upon their defense in a proceeding of this kind."

The first objection may be well termed frivolous.

The affidavit sets forth the publication of grossly abusive articles in relation to the proceedings of the Court of Sessions.

The affidavit of the district attorney states that such articles were grossly false and inaccurate reports of the proceedings.   It is unnecessary to cite authorities or to demonstrate by argument that a court has jurisdiction of a proceeding to punish for a contempt persons who are charged with publishing false and inaccuate reports of the proceedings of that court.   The Code of Civil Procedure, section 8, expressly makes such a publication a criminal contempt.

The second objection, that the affidavit did not show the commission of any act coming within the provisions of section 8, or any subdivision thereof, is equally untenable ; as before stated, the affidavit sets forth in full certain articles in relation to the proceedings of the court alleged to have been published in a newspaper printed in the city of Albany, and which articles, the affidavit states, to be grossly

false and inaccurate reports of the proceedings of said court, an amply sufficient allegation to bring it within the section of the Code claimed to have been violated.

The next objection is, that the affidavit did not state or point out wherein the articles alleged to have been published were false or grossly inaccurate. It is sufficient answer to that to say that the affidavit characterizes all the articles as grossly false and inaccurate. In addition, the court did of itself then and there announce to the defendants and their counsel the particular things stated in the articles for which it proposed to hold them to answer, and that portion was pointed out to them in the following words : " That portion of it in which they charge this court with assigning Henry Peckham to defend a repeater or a person charged with repeating, and also Mr. Andrews, stating that they were both counsel to the citizens' committee, or some committee, Honest Elections' committee, or something of that sort ; that portion I shall require them to reply to."

As we have seen, it was not necessary that the order to show cause should be founded upon any affidavit ; the court could make an order. of its own motion and bring the defendants into court and notify them of the charge against them. Here an affidavit was made, setting forth several newspaper articles ; the editors, proprietors and managers of the newspaper are brought into court, and then and there the court orally notifies them what particular portion of those articles it proposed to hold them to answer for. The court gave them what might perhaps be termed a bill of particulars.

It will be observed that up to this point no question is raised as to the affidavit being insufficient as a matter of evidence to charge the defendants with the authorship or publication of the articles in question, or that they were connected therewith by legal evidence ; the only objections that are raised are as to the jurisdiction of the court to entertain the proceedings, and as to whether the facts set forth in the affidavit constitute a criminal contempt ; and that the affidavit does not specify what portions of the articles published are grossly false and inaccurate ; there is not a hint or suggestion that the defendants were not guilty of the publication of the articles in question, the only question raised being whether they constitute an offense. The objection that some of the allegations were upon information and belief was not raised in any way before the court.

PEOPLE ex rel. BARNES *v.* COURT OF SESSIONS.   249

Hun.]          THIRD DEPARTMENT, DECEMBER TERM, 1894.

It was claimed by the defendants that the affidavit was like an indictment or complaint in a civil action, and their objections being overruled, and the court having pointed out to them the specific portions of the articles which it claimed to be false and inaccurate reports of its proceedings, the defendants then made a verified answer to the accusation made against them. Instead of pleading not guilty, or making a general denial, as to an indictment or complaint, where it is intended to deny all that is alleged in the indictment or complaint, they answer only a part of the moving paper, which they have designated as corresponding to an indictment or complaint, but which may more properly be likened to an information. Their answer is a singular document and reads as follows: " The above-named defendants and each of them hereby deny, each for himself, that he has been guilty of the publication of any false or grossly inaccurate report of any of the proceedings of the said court."

Under all rules of pleading, or of evidence, it seems to me that this must be regarded as an admission of everything charged against them, except that which is specifically denied, and so it must have appeared to the court.

It is a negative pregnant; a negative big with affirmative meaning.

The affidavit alleged the publication of several articles in a newspaper, that such articles were grossly false and inaccurate reports of the proceedings of the court, and that the defendants were " the editors, proprietors and managers of said paper and the writers and publishers of said articles."

Merely denying that they had been guilty of publishing any false or grossly inaccurate proceedings of the court was in effect an admission of the publication of such articles in the newspaper named, and that they were the editors, proprietors and managers of the newspaper, and the writers and publishers of the articles set forth in the affidavit they were answering. The court had specified the particular portions of the articles they were to be held accountable for, and in simply using the language of the Code which defines the offense, in making their denial, their answer was evasive.

In the case of *Yates* v. *Lansing* (9 Johns. 395–414) it was held that where there is a refusal to answer to a charge against one for

250    PEOPLE ex rel. BARNES v. COURT OF SESSIONS.

THIRD DEPARTMENT, DECEMBER TERM, 1894.    [Vol. 82.

contempt, it is an admission by the defendant that the complaint is well founded. Upon the same principle I think it must be held that when he does answer he must be held to admit those things which he does not deny.

If we treat the proceeding as a motion, being heard on affidavits, it seems to me the result is the same. Considering it as a motion, it may be that, if the defendants had come into court and challenged the sufficiency of the allegations made against them, that as matter of law the allegations in the moving papers and the statement of the court were not legally sufficient to hold them responsible as writers and publishers of the articles in question, and had thus raised the question of the sufficiency of the allegation upon information and belief to hold them, that the court might have held, and properly so, that there was not sufficient to hold them responsible; but they did not elect to take any such proceedings; they did not keep silent as to the facts, when called upon to make answer to the charge of being guilty as the authors or publishers of the articles in question; they chose, as it were, to go upon the stand and be sworn by filing their verified answer, and thereby placing themselves in the same situation that the defendant in either a civil or criminal action is always placed when he becomes a witness in his own behalf, either by being sworn and giving oral testimony, or by giving testimony by affidavit or pleading.

The rule that a defendant making answer to a complaint against him admits those things stated in the complaint that he does not in his answer deny, is not simply a rule of pleading; it is a rule of evidence as well.

And where, upon the hearing of a motion, the party answering the moving affidavit or affidavits only denies a portion of the allegations of fact alleged in them, he must be held to admit all those which he does not deny.

It seems to me, therefore, that the attitude of the defendants before the court, the answer to the accusation filed by them, tested by any rule of pleading or of evidence, or the construction ordinarily given to language, compels us to hold that they were the publishers of the articles in question, and that the only issue presented to the court was, whether they were in truth and in fact false or grossly inaccurate reports of its proceedings; that was the only

issue tendered, and it was tendered to the court whose proceedings were purported to be published. Whether they were false or grossly inaccurate that court knew.

As we have heretofore seen, the court was the judge as to whether in that respect contempt had been committed against it.

The Court of Sessions might well have proceeded to judgment upon the answer so filed, because, as we have already seen, it was unnecessary to file interrogatories. But, out of abundant caution, it caused interrogatories to be propounded to the defendants, and gave them ample opportunity to purge themselves of the contempt charged against them.

Separate interrogatories were propounded to each of the defendants. It is unnecessary for the purposes of this discussion to set forth the interrogatories propounded to each and their answers thereto; they are in substance alike, and a consideration of those propounded to one of the defendants, together with his answers thereto, will be sufficient to dispose of the questions relating to all of them. The following interrogatories were propounded to the defendant Barnes:

Q. 1. "Who compose the editorial staff of the Albany *Morning Express*, and what are the duties of each member of the editorial staff respectively?"

Q. 2. "Who compose the editorial staff of the Albany *Evening Journal*, and what are the duties of each member of the staff respectively?"

Q. 3. "Is not John Hastings managing editor of the Albany *Morning Express?*"

Q. 4. "Does not George N. Southwick sometimes write editorials for the Albany *Morning Express?*"

Q. 5. "Do you know from statements made by the writer, or in any other way, who wrote the editorial in the Albany *Morning Express* of the issue of April 21st, 1894, and on the fourth page of said issue, entitled 'The Disgrace of Clute'?"

Q. 6. "Did George N. Southwick write that editorial?"

Q. 7. "Did John Hastings write that editorial?"

Q. 8. "If you answer the two preceding interrogatories in the negative, or say that you do not know, please state whether any one besides yourself wrote that editorial, and if so, who?"

252 PEOPLE ex rel. BARNES v. COURT OF SESSIONS.

THIRD DEPARTMENT, DECEMBER TERM, 1894. [Vol. 82.

Q. 9. " Do you know from statements made by the writer, or in any other way, who wrote the news article in the Albany *Morning Express* of the issue of April 21, 1894, and on the eighth page of said issue, entitled, ' His Action Needs Explanation'? "

Q. 10. " If you answer the preceding interrogatory in the negative, or say that you do not know, please state whether any one besides yourself wrote that article, and if so, who ? "

To these interrogatories the defendant Barnes made the following response :

" The above-named defendant, William Barnes, Jr., in response to the interrogatories filed herein, hereby denies that he has been guilty of the publication of any report of its proceedings, which was believed or intended by this defendant to be false or grossly inaccurate, and disclaims any intention on his part to be guilty of such contempt, or of any such false or inaccurate publication.

" This defendant in response to the fourth interrogatory filed and to be administered to this defendant, answers the same, ' I do not know.'

"As to each and every of the other interrogatories filed and to be administered to this defendant, this defendant, acting under advice of counsel, hereby declines to answer the said interrogatories, or any or either of them, upon the ground that answers to such interrogatories might tend to expose this defendant to a criminal prosecution, or might furnish evidence which could be used against him on such prosecution, and this defendant is privileged under the Constitution and laws of this State from answering the same."

If the defendant had chosen to assert what he claims to be his rights under the Constitution, and refused to be sworn as a witness, it may be that he would have been sustained in such contention, but he made no such objection ; or if he had confined himself to answering the single interrogatory that he did answer, and then making the objections to the others that he did, he would then perhaps have come within the case of *People ex rel. Taylor* v. *Forbes* (143 N. Y. 219–230). But prior to answering or raising his objection he made a voluntary statement which is not, and does not profess to be, in answer or response to any of the interrogatories propounded to him, but is intended as testimony, or a statement, in his own behalf.

He first made himself a witness in his own behalf, then answered

PEOPLE ex rel. BARNES *v.* COURT OF SESSIONS. 253

Hun. ]                THIRD DEPARTMENT, DECEMBER TERM, 1894.

the question he thought safe, and then raised his constitutional privilege as to the others.

The question of privilege is raised too late; a defendant cannot go upon the stand as a witness and give testimony that is, or is intended to be, for his own benefit, and refuse to answer questions that may tend to convict or criminate him. (*Stover* v. *People*, 56 N. Y. 315.)

It will be observed that the defendant does not deny that he is the publisher, proprietor or manager, or the writer of any of the articles in question, but denies "that he has been guilty of the publication of any report of its proceedings which was believed or intended by this defendant to be false or grossly inaccurate, and disclaims any intention on his part to be guilty of such contempt, or of any false or inaccurate publication."

As I have shown in discussing the answer filed by the defendants, this is an admission of the publication, or of responsibility for the publication, of the articles in question, and upon the most favorable construction for the defendants can only be said to raise the question as to their correctness as reports of the proceedings of the Court of Sessions, there being added to it now a disclaimer of any belief by the defendants that they were false, and a disclaimer of any intention of being guilty of contempt, or of publishing any false or inaccurate report.

In so far as this response raises a question of intention, it is no defense or justification of the defendants' action; it is simply a matter in palliation. (*People* v. *Freer*, 1 Caines, 518; *Ex parte Chamberlain*, 4 Cow. 49.)

The testimony thus offered by the defendant in his own behalf, coupled with his refusal to answer the other questions propounded to him, amply justified the court in holding him guilty of the offense charged. They were put in a position to purge themselves if they were innocent; if innocent, they could deny that they were the publishers of the newspaper in which such articles appeared, or that they were the writers or authors of such articles; but when they elected to deny any intention of publishing any false or inaccurate reports, and to deny the publication of any report of the proceedings of the court which they believed to be false, and remained mute as to the matters of fact set forth in the affidavit, and refused to answer

254    PEOPLE ex rel. BARNES v. COURT OF SESSIONS.

THIRD DEPARTMENT, DECEMBER TERM, 1894.        [Vol. 82.

the interrogatories propounded to them, it must be assumed, under the rules of evidence, that they did so because they could not truthfully deny the facts alleged, and could not truthfully answer the interrogatories propounded to them without avowing their guilt.

The silence of a party where he has an opportunity to deny a statement in which he is interested is taken as an admission, and must be so regarded on the trial.   (1 Taylor on Ev. 809.)

Having volunteered to give testimony in his own behalf, there is no reason why he should not be held to the same rules that prevail in relation to any defendant charged with crime who becomes a witness in his own behalf; he cannot elect to give testimony as to such parts of his case as he may choose and refuse as to others, and if he does so refuse the presumption is that he does so because he cannot truthfully answer without confessing his guilt.   (*Stover* v. *People*, 56 N. Y. 315 ; *Andrews* v. *Frye*, 104 Mass. 234.)

Thus the court below, after a full consideration of the defendants' case, both upon the answer filed by them and upon the testimony given by them in response to the interrogatories filed, adjudged not only that the contempt had been committed against the court, but that the defendants were the persons guilty thereof.   It was a trial upon the merits as much as any such proceedings well can be ; an adjudication both upon the law and the facts ; and there being some evidence to sustain the finding of fact, this court will not disturb it.

The only defense offered upon the part of the defendants was that they had no intention of committing any contempt, or of publishing any false or inaccurate report of the proceedings of the court, and that they did not believe that they had done so ; this, as before stated, was simply a palliation of the offense, and seems to have been taken into consideration by the court in imposing sentence in the case, a very moderate one for the gross nature of the offense committed.

I can see nothing in these proceedings which would warrant me in saying that the court was not justified in holding that the relators were responsible for the publication or writing of the articles in question.   I do not see that in so holding the court violated any rule of law that is necessary for the protection of the liberty of the citizen.   The defendants have been granted ample opportunity to purge themselves of the contempt charged, and they have failed to do so.

PEOPLE ex rel. BARNES *v.* COURT OF SESSIONS.   255

Hun.]          THIRD DEPARTMENT, DECEMBER TERM, 1894.

The certiorari should, therefore be quashed, and the decision of the Court of Sessions affirmed.

PUTNAM, J., concurred.

MAYHAM, P. J. (concurring):

Proceedings having been heretofore instituted in the Court of Sessions to determine whether the relators had been guilty of contempt of that court in publishing certain alleged libelous articles reflecting upon that court, on the 12th of May, 1894, the court made the following order or determination:

" On all of the papers in the proceeding, the parties appearing in person and by counsel, and after hearing Matthew Hale, Esq., of counsel for the defendants, and James W. Eaton, Esq., district attorney of the county of Albany, we did determine and adjudge that the said William Barnes, Jr., George N. Southwick and Arthur Lucas to be guilty of criminal contempt of court, and did sentence said William Barnes, Jr., George N. Southwick and Arthur Lucas, as a punishment for said offense, to each pay a fine of 'one hundred dollars, or in lieu thereof to each stand committed to the Albany County Jail for the period of thirty days."

This order of conviction was duly signed by the county judge presiding at such Court of Sessions, and by the associate justices of Sessions, and was attested by the signature and seal of the clerk of that court.

For the purpose of reviewing that conviction and determination the relators, on the 12th day of July, 1894, applied to the Special Term of this court for, and obtained, an order that a writ of certiorari issue out of this court, directed to the Court of Sessions of Albany county, and staying all proceedings in execution of the conviction pending such certiorari, and on the same day a writ of certiorari was issued and allowed by the justice holding such term, directed to the Court of Sessions of Albany county, among other things commanding that court to certify and return to the Supreme Court, at the office of the clerk of Albany county, all and singular, the proceedings, decisions and actions of the Court of Sessions in the premises, and all the evidence, documents, records or papers before it, or which were submitted to it concerning the same, and all the affidavits offered to, and filed with such Court of Sessions in

256    PEOPLE ex rel. BARNES *v*. COURT OF SESSIONS.

THIRD DEPARTMENT, DECEMBER TERM, 1894.    [Vol. 82.

relation thereto, with the rulings and decisions of the court thereon, to the end that the decision and action of such Court of Sessions might be reviewed.

To this writ the Court of Sessions made and filed a return, setting forth that on the 25th of April, 1894, James W. Eaton, district attorney of the county of Albany, presented his affidavit, duly verified, also a newspaper, the Albany *Morning Express*, dated April 21, 1894, extracts from which were made a part of the affidavit, upon which affidavit and extract the court made an order requiring the relators to show cause before it on the 27th day of April, 1894, why they and each of them should not be punished for a contempt of court. The affidavit of James W. Eaton, district attorney of Albany county, set out the fact that on the 20th day of April, 1894, the grand jury reported several indictments to the Court of Sessions, at which Hon. JACOB H. CLUTE, county judge of Albany county, presided, among which were indictments against John Hughes and William Doyle for assault in the second degree, and John Donally for violating the election laws, who, on being arraigned in such Court of Sessions, Judge CLUTE assigned Henry W. Peckham, a member of the bar, to defend Hughes and Doyle, and Albert L. Andrews, also a member of the bar, to defend Donally upon the indictments against them respectively.

The affidavit also showed that on the morning of the twenty-first day of April, and while the Court of Sessions was still in session, the Albany *Morning Express*, a daily newspaper printed in the city of Albany, where such court held its sessions, contained an article reflecting upon the presiding judge and upon his integrity, and tending to influence popular passion concerning the cases and concerning the assignment of counsel in the same, and thereby tending to impede and obstruct the administration of justice and to impair the respect and authority of the court, such publication being a grossly false and inaccurate report of the proceeding of the court, and which affidavit set out the article so published, a portion of which is as follows:

"THE DISGRACE OF CLUTE.

"County Judge Jacob H. Clute added to his unsavory notoriety yesterday by assigning Arthur L. Andrews and Henry A. Peckham to defend men who were arrested on election day, charged with

attempting to vote illegally.   Messrs. Andrews and Peckham have been prominent among the lawyers whose services have been given freely and without charge to prosecuting violators of the election laws.

" Of this fact Jacob H. Clute, of course, was fully aware, not only because their activity in the interest of honest elections has been a matter of current news, but also because they have appeared before Judge Clute's own tribunal in the performance of their duty.   In the light of these facts, the low-down character of the judicial trick to which Jacob H. Clute descended, may be realized."

The affidavit also referred to the following article published in such paper:

" HIS ACTION NEEDS EXPLANATION.

" JUDGE CLUTE ASSIGNS COMMITTEE OF 50's COUNSEL TO DEFEND ALLEGED REPEATERS.

" He Names Messrs. Arthur L. Andrews & Harry A. Peckham.

"Both Men Have Been Indefatigably Active In Securing Evidence Against Violators Of The Election Law. — Nobody Has Yet Suggested That Perhaps Judge Clute Is Laboring Under The Delusion That He Is The Chief Comedian In A Farce Company.
\*   \*   \*

" Yesterday, when the grand jury returned with indictments against several of the men charged with infraction of the election laws, this same Judge Clute gave proof that he still has a peculiar conception of the duty of a public official.   He designated to defend two of the men so accused, Messrs. Arthur L. Andrews and Harry A. Peckham, lawyers, who, as counsel for the Committee of Fifty, have been indefatigable for many weeks in their efforts to secure the conviction of any who might be guilty of crooked work in connection with the election."

The affidavit further states:

" That, as deponent is informed and believes, the above-named defendants are the editors, proprietors and managers of said paper, and the writers and publishers of said articles.

" That a complete copy of said paper containing said articles is herewith filed, marked Exhibit ' A,' and made a part of the papers to be used upon this application.

" That no previous application has been made for the order hereby asked.   Wherefore, deponent prays that an order to show cause

258   PEOPLE ex rel. BARNES *v.* COURT OF SESSIONS.

THIRD DEPARTMENT, DECEMBER TERM, 1894.          [Vol. 82.

issue from this court requiring said defendants, William Barnes, Jr., George N. Southwick, John Hastings and Arthur Lucas, to show cause before this court at some time therein stated, why they, or each or any of them, should not be punished for contempt of this court in the writing and publication of the articles hereinbefore set forth."

The return also contained the order to show cause, the proceedings had thereon before the Court of Sessions, the answers of the several defendants on oath, each denying that he had been guilty of the publication of any false or grossly inaccurate report of any proceedings of said court. Interrogatories were then propounded to each of the relators separately, to which answers were severally made, none of which directly denied the allegations in the affidavit of Mr. Eaton, charging, on information and belief, that the defendants were the editors, publishers and managers of the said paper, and the writers and publishers of the articles charged as contumacious. The effect of the determination of the court was that the relators were in contempt of court, and that they had not purged themselves of such contempt by their answer to the order to show cause or on their answers to the interrogatories.

It is now urged by the learned district attorney that conviction for criminal contempt cannot be reviewed on certiorari, and that the exception contained in section 2148 of the Code of Civil Procedure, passed in 1889, of criminal contempts of court, has been repealed by chapter 372 of the Laws of 1884. Section 515 of the Code of Criminal Procedure provides as follows :

" Writs of error and of certiorari in criminal actions and proceedings, and special procedings of a criminal nature, as they have heretofore existed, are abolished, and hereafter the only mode of reviewing a judgment or order in a criminal action or proceeding, or special proceeding of a criminal nature, is by appeal."

The language of this section is so broad and comprehensive that but for the recent decision of the Court of Appeals in the case of *The People ex rel. Taylor* v. *Gerrit A. Forbes* (143 N. Y. 219; 71 Official Series, Oct. 20, 1894) I should have little doubt in holding that the remedy in a case like this is by appeal and not by certiorari. But the authority of that decision cannot be ignored by this court, and I see no way of distinguishing it in principle from the case at bar. Both are certiorari from conviction for a criminal

PEOPLE ex rel. BARNES v. COURT OF SESSIONS.   259

Hun.]             THIRD DEPARTMENT, DECEMBER TERM, 1894.

contempt, neither of which are enumerated in the Code of Criminal Procedure, and the Court of Appeals hold that the "special proceedings of a criminal nature" referred to in section 515 of the Code of Criminal Procedure are only those designated as such in that Code.

We must, therefore, consider and determine whether or not this conviction can be sustained upon the merits.

On the return of the order to show cause the defendants in that proceeding appeared in person and by counsel and moved that the order be vacated and set aside, which motion was denied, and the presiding judge in denying the motion called the attention of the defendants to the charge in the publication, that he, as presiding judge, has assigned Henry A. Peckham and Arthur L. Andrews to defend men who were arrested on election day charged with attempting to vote illegally, and that Peckham and Andrews, whose services had been given to prosecuting violators of the election laws, had been assigned by the court to defend violators of the election laws, whereas the persons whom Mr. Peckham was assigned to defend were indicted for an assault, and Arthur L. Andrews was not counsel for the committee of fifty to prosecute election frauds as charged in such publication, and that the report published in the *Express* was not a true publication of the proceedings in court, and was, therefore, a contempt.

It seems that the portion of the articles on which the court rested the charge of contempt is mainly found in the commencement of the published articles which seem to form the basis of the assault upon the court, of which the balance of the article is full; it commences as follows:

"THE DISGRACE OF CLUTE.

"County Judge Jacob H. Clute added to his unsavory notoriety yesterday by assigning Arthur L. Andrews and Henry A. Peckham to defend men who were arrested on election day charged with attempting to vote illegally."

The article then proceeds to allege that those lawyers had been engaged in prosecuting violators of the election laws, and that the judge was cognizant of that fact. It then proceeds as follows: "In the light of these facts the low-down character of the judicial trick to which Jacob H. Clute descended may be realized.

260    PEOPLE ex rel. BARNES v. COURT OF SESSIONS.

THIRD DEPARTMENT, DECEMBER TERM, 1894.    [Vol. 82.

" He availed himself of his power as county judge to place these two worthy lawyers, who have fought to prevent suffrage stealing in Albany, in the dilemma of defending election criminals, or else subjecting themselves to a fine of $500 and imprisonment for thirty days for contempt of court." The affidavit of the district attorney, used before the court in obtaining the order to show cause, shows that the indictment against John Hughes and William Doyle, whom Peckham was assigned to defend, was not for violation of the Election Law, and that they were not charged with attempting to vote illegally, but that such indictment was for an assault not connected with election or committed on election day. It would seem to follow, therefore, that the article complained of was not a substantially correct account of a judicial proceeding in court, which would be a privileged and lawful publication, but was, upon its face, false and used as the pretext for making a most offensive and disgraceful attack upon the Court of Sessions, while such court was in session, tending to hold it up in a most unfavorable and ridiculous light before the public, and in a manner well calculated to impair the public confidence and respect for that important tribunal, charged, as it is under the law, with the trial of most of the criminal offenses in the administration of the criminal law in that county.

Can the court, under such circumstances, vindicate its good name and punish as for contempt for the publication of a false report of its proceedings and a false, scurrilous and censorious attack made upon its integrity through a public newspaper ?

If it has such authority, the charge made against it in this case would seem to justify this exercise.

Section 143 of the Penal Code defines criminal contempt of courts, and while it makes them misdemeanors, it does not take from the court the power of inflicting summary punishment. Subdivision 7 of that section makes the publication of any false or grossly inaccurate report of its proceedings a contempt of court.

Assuming, therefore, that the relators by this publication are brought within the definition of criminal contempt, as defined in the subdivision above referred to, did the court in this proceeding acquire jurisdiction of the subject-matter and of the persons of the relators so as properly to enable it to impose the penalty ?

Section 10 of the Code of Civil Procedure, after specifying the

causes of criminal contempt, among which is the one charged in this case, provides : " Such a contempt committed in the immediate view and presence of the court may be punished summarily; when not so committed the party charged must be notified of the accusation and have a reasonable time to make a defense."

The alleged offense in this case was not committed in the presence of the court, and the accused parties were entitled to, and were given, reasonable time to make their defense. The affidavits and order to show cause were duly served upon the relators, and no question seems to be made of the sufficiency of the notice, and all of the defendants, as we have seen, appeared before the court in person and by counsel.

There is, therefore, no serious question as to the jurisdiction of the court, nor do we think the determination of the Court of Sessions as to the relators' participation in the publication of this contumacious libel can be questioned here. The production of the printed article in the paper in which it was printed proved the publication, and the affidavit of the district attorney established *prima facie* the participation of the relators in its publication. That *prima facie* case was in no way affected by the evasive answers of the defendants or by any proof offered by them.

That question was fairly raised and might have been controverted by the relators, either by their answer or by answers to the interrogatories filed, or by independent proof before the court.

It is true that they were not bound by these answers to criminate themselves, and that no legitimate conclusions or inference of guilt can be drawn from the assertion of their privilege, but the facts of the existence and assertion of such privilege does not relieve them from the *prima facie* case made against them by the affidavit of the district attorney.

On the whole case I think the order and conviction for contempt of court must be affirmed and the writ of certiorari quashed, with fifty dollars costs and printing disbursements.

Let an order be entered accordingly.

Proceedings of the Court of Sessions affirmed, writ of certiorari quashed, with fifty dollars costs and disbursements.